UNITED STATED DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **Familias Unidas Por La Educación,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**El Paso Independent School District; and**<br><br>**Robert Geske, in his official capacity as President of the Board of Trustees of the El Paso Independent School District;**<br><br>    **Defendants.** | **Case No. 3:20-cv-170** |

## COMPLAINT SEEKING INJUNCTIVE RELIEF

For more than a century, the El Paso Independent School District ("EPISD") has engaged in systemic discrimination against poor, Hispanic, and Mexican-American students. Freed from the restraints of judicial oversight in 2017, EPISD immediately returned to its discriminatory roots: within months of the termination of a court order compelling desegregation, EPISD closed three elementary schools in or near the Chamizal neighborhood while leaving untouched schools in whiter neighborhoods. Further exacerbating the harm caused by these school closings, EPISD directed no bond monies for improving facilities in this same neighborhood, but instead dedicated those funds to schools in other, whiter neighborhoods.

Plaintiff asks this Court to once again hold EPISD accountable for its discriminatory practices. Because recent acts by EPISD deny equal protection to all school children in El Paso, Plaintiff seeks the judicial intervention necessary to ensure equal access to safe, clean and accessible schools in Chamizal.

1.      Familias Unidas Por La Educación ("Familias Unidas") is a non-profit membership organization comprised primarily of parents of children whose elementary schools were closed by the El Paso Independent School District ("EPISD" or the "District").  To justify closing schools in poorer Hispanic neighborhoods—Beall, Burleson, and Alta Vista Elementary Schools—and retain underutilized facilities in wealthier white neighborhoods, EPISD rejected the recommendation of its own engineering firm and substituted a patently arbitrary formula to manipulate utilization rates.  During the closure decision and the closure process, EPISD turned a deaf ear to the views of Spanish-speaking parents.  After the closures, EPISD failed to remediate the schools to accommodate the increased enrollment from Beall, Burleson, and Alta Vista.  The consequence has been to concentrate poorer Hispanic children in schools that are among the oldest, most poorly maintained, and most dangerous schools in EPISD.  Familias Unidas seeks declaratory and injunctive relief to end EPISD's unlawful treatment of Hispanic and Mexican-American students and families in the Chamizal neighborhoods.  Familias Unidas seeks to ensure that students in the Chamizal have the equal opportunity to obtain an education without regard to their race or national origin.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction) because this action arises under the laws of the United States, including 42 U.S.C. § 1983.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are located in this district and the events giving rise Plaintiff's claims occurred within this district.

4.      An actual controversy between the Plaintiff and Defendants renders declaratory judgment appropriate under 28 U.S.C. § 2201.

2

**PARTIES**

5.      Plaintiff Familias Unidas Por La Educación is a not-for-profit membership organization located in El Paso, Texas.  Familias Unidas began work in 2016 through a number of predecessor organizations that were consolidated in 2020.  Familias Unidas consists primarily of, and is governed by, parents, guardians, and caregivers of children who previously attended Beall and Burleson elementary schools.  Familias Unidas's mission is to improve educational opportunities for children who expect to attend Bowie and Jefferson High Schools.

6.      The claims asserted in this lawsuit are germane to the purposes for which Familias Unidas exists.  As set forth in its articles of incorporation, Familias Unidas exists "To improve the educational outcomes for children in the Chamizal area of El Paso, Texas, especially children who are in the feeder patterns of Bowie and Jefferson High Schools."  EPISD's failure to comply with applicable federal laws that aim to ensure an adequate education for all students, regardless of race or national origin, has interfered with Plaintiff's purpose and mission.  Through this lawsuit, Familias Unidas aims to reverse the harms caused by EPISD, and in doing so improve education for its members' children.

7.      Familias Unidas has standing in that (i) its members would have standing to challenge the violations alleged in this complaint, (ii) Familias Unidas seeks to protect interests germane to its purpose, and (iii) litigation of the violations alleged in this complaint does not require the participation of individual members in the lawsuit.  *See Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550–51 (5th Cir. 2010).

8.      Defendant EPISD is a public school district and a local educational agency headquartered and operating in El Paso, Texas.  Within its boundaries, EPISD has primary responsibility for implementing Texas's system of public education and promoting student performance in accord with the Texas Education Code.

3

9.      EPISD is governed by a board of trustees (the "Board"), which is responsible for overseeing EPISD's management, including establishing general policies governing the operation of schools in the District.  The Board has seven seats, each representing a separate geographic district, and is legally and solely responsible for deciding whether to continue or cease to operate schools within the District.

10.      EPISD may be served through its Superintendent, Juan E. Cabrera.  *See* Fed. R. Civ. P. 4(J)(2)(A) (unit of local government may be served through its chief executive officer); Texas Education Code § 11.201(a) (superintendent is chief executive officer of the school district).

11.      Defendant Robert Geske is President of the EPISD Board of Trustees.  As president, Mr. Geske has the authority and responsibility to enforce parliamentary rules at Board meetings, coordinate with the Superintendent concerning issues that may need to come before the Board for action, develop agendas for Board meetings, and give recognition to Board members to comment on a topic being discussed.  Familias Unidas brings this suit against Robert Geske in his official capacity as President of the EPISD Board of Trustees.

## FACTS

### I.      EPISD Has Repeatedly and Consistently Discriminated Along Racial and Ethnic Lines and Against the Chamizal Neighborhood.

12.      Since it was first created in 1883, EPISD has demonstrated a repeated and consistent history of purposeful discrimination against minority students and families with disregard for state and federal law.  These violations have required the intervention of this Court, the United States Court of Appeals for the Fifth Circuit, and various federal and state agencies including the Federal Bureau of Investigation, the United States Department of Education, the United States Department of Justice, and the Texas Education Agency.

4

13.     In the 2018 to 2019 school year, there were 55 elementary schools in EPISD.[1]

14.     EPISD is a majority-minority district.  In the 2018 to 2019 school year, about 84% of EPISD students were Hispanic and about 9% of students were white.

15.     The Chamizal neighborhood in El Paso is approximately bounded to the north by I-10, the east by Gateway South Boulevard, the south by Paisano Drive and Cesar Chavez Memorial Highway, and the west by Laurel Street and the railroad tracks.



# The Chamizal Neighborhood

El Paso, Texas

El Paso County Appraisal District Parcel Shapefile, TIGER/Line Shapefile - US Census Bureau, Esri, HERE, Garmin, (c) OpenStreetMap contributors, and the GIS user community

---

[1]     EPISD also had one combined elementary and middle school, MacArthur Intermediate School, as well as an alternative disciplinary education program for elementary school students, the About Face Program.

16.     The Chamizal has a long and storied history.  The neighborhood is situated along the border of the United States and Mexico.

17.     Since it was established, the Chamizal has been a working-class, immigrant, Mexican-American neighborhood that has been subject to repeated discrimination.

18.     The Chamizal neighborhood is approximately comprised of census tracts 28 and 29.

19.     The United States and Mexico disputed the ownership of parts of the Chamizal until 1964.

20.     The dispute, and associated lack of law enforcement authority, made the area a haven for slumlords who sought to obtain the most rent from the most vulnerable populations with the least government oversight, as well as business owners looking to install hazards like slaughterhouses and garbage dumps that other neighborhoods had the power to prevent.

21.     In 1964, the United States and Mexico ratified a treaty resolving the dispute.  The controversial treaty split the disputed land between the United States and Mexico, separating people from friends and family along newly declared national boundaries.

22.     El Paso is one of the most impoverished cities in the United States, and the Chamizal neighborhood is one of the poorest, most Hispanic, and most Mexican-American neighborhoods in El Paso.[2]

23.     Specifically, in the Chamizal neighborhood, more than 50% of the population falls below the poverty level and more than 98% of the population is Hispanic.  By contrast,

---

[2]     Demographic information is based upon the 2018 American Community Survey 5-Year Estimates, available at https://data.census.gov, unless otherwise noted.  Information for the Chamizal neighborhood is based upon census tracts 28 and 29.

when taken as a whole, 20% of the population of El Paso falls below the poverty level and 81% of the population is Hispanic.

24.     Nearly all Hispanic individuals residing in El Paso and the Chamizal are of Mexican descent.[3]

25.     Beall Elementary School is a former EPISD elementary school located in the Chamizal.  The Board voted to close Beall in January 2019, and Beall was closed beginning with the 2019 to 2020 school year.

26.     Burleson Elementary School is a former EPISD elementary school located near the Chamizal.  The Board voted to close Burleson in January 2019, and Burleson was closed beginning with the 2019 to 2020 school year.

27.     Alta Vista Elementary School is a former EPISD elementary school located near the Chamizal.  The Board voted to close Alta Vista in January 2019, and Alta Vista was closed beginning with the 2019 to 2020 school year.

28.     Zavala Elementary School is an elementary school in EPISD.

29.     Zavala Elementary School is located in the Chamizal.

30.     In connection with the closure of Beall and Burleson, the Board adjusted the Zavala attendance zones to include students who were in the Burleson attendance zone.

31.     Douglass Elementary School is an EPISD elementary school located in the Chamizal.

32.     In connection with the closure of Beall and Burleson, the Board adjusted the Douglass attendance zones to include students who previously attended Beall and some students who previously attended Zavala.

---

[3]     2010 Decennial Census, available at https://bit.ly/2wQTpCq.

33.     The attendance zones for Beall, Burleson, Douglass, and Zavala (together, the "Chamizal Schools") overlap with United States Census Bureau Tracts 28, 29, and 30 (the "School Zones").  These communities are demographically and culturally distinct from El Paso as a whole.

34.     Within the School Zones, about 94% of households speak Spanish at home and about 40% of residents were not born in the United States—both rates that far exceed EPISD's rates of 61% and 24%, respectively.

35.     EPISD has a particularly egregious history of purposeful discrimination against Hispanic and Mexican-American students in the Chamizal neighborhood of El Paso.

36.     The schools in the present-day Chamizal area were originally administered explicitly as segregated Mexican schools.

37.     A 1922 survey of El Paso Schools found "two cities existing side by side, with only the railroad tracks between, and yet varying greatly in their needs, their taxable values and their racial traits and ideas."[4]  The surveyor concluded that "[t]his distinction must be borne in mind by anyone who would really understand the school problem of El Paso."[5]

38.     The Chamizal Schools are, on average, much more Hispanic and Mexican-American and have significantly more limited-English proficient students than EPISD's elementary schools as a whole.

39.     More than 99% of all students in the Chamizal Schools are Hispanic.

40.     The four Chamizal Schools and Alta Vista include (i) the two schools with the greatest percentage of Hispanic students in EPISD, (ii) four of the eight EPISD schools with the

---

[4]     Paul W. Horn, *Survey of the City Schools of El Paso, Texas* 8 (1922).

[5]     *Id.*

greatest percentage of English Language Learners, (iii) the two EPISD schools with the greatest

percentage of Economically Disadvantaged students, and (iv) excluding alternative (disciplinary)

education programs, four of the six EPISD schools with the greatest percentage of students

identified as at-risk of dropping out of school.[6]

41.     Bowie High School and Thomas Jefferson High School are in the Chamizal

Schools' feeder patterns and are located in or near the Chamizal.

### A.     The Chamizal Schools Were Subject to This Court's Desegregation Order in Alvarado v. EPISD.

42.     In 1970, Mexican-American parents filed a lawsuit on behalf of themselves and

their children against EPISD, alleging racial and ethnic discrimination through the operation of a

dual segregated school system.

43.     Following a lengthy trial on the merits, this Court found that plaintiffs had

demonstrated "a past or historical segregative design on the part of [EPISD] in virtually all areas

and aspects of the School System" as well as "a very limited present and continuing" dual school

system.

44.     Specifically, this Court found, among other things, that the establishment of

Bowie High School intentionally fostered ethnic isolation of Mexican-Americans and its faculty

composition fell above the Singleton tolerance range.[7]

---

[6]     All demographic information of students in this complaint is for the 2018-2019 academic year, unless otherwise noted.

[7]     The Singleton Tolerance Range, or Singleton Variation, refers to the degree to which a school district can deviate from *Singleton*'s requirement that school districts assign school staff such that the racial composition of staff at each school is "substantially the same" as in the entire school system. *Singleton v. Jackson Mun. Separate Sch. Dist.*, 419 F.2d 1211, 1222 (5th Cir.), *judgment vacated in part on other grounds Carter v. W. Feliciana Par. Sch. Bd.*, 396 U.S. 226 (1969), *judgment rev'd on other grounds sub nom. Carter v. W. Feliciana Par. Sch. Bd.*, 396 U.S. 290 (1970).

45.     This Court further found that EPISD had a history of maintaining inferior facilities for Mexican-American students by, among other things: (i) limiting facilities funding, (ii) poor building maintenance, (iii) overcrowding, (iv) maintaining inadequate playground and sports facilities, and (v) poor lighting conditions.

46.     This Court also found that the disparate allocation of air conditioning to white and Mexican-American schools indicated discriminatory intent by EPISD.

47.     This Court's order in *Alvarado* documented some of the history of Chamizal Schools.  For example, EPISD's history of discrimination against the Chamizal Schools extends far back to the 1800s, with the establishment of Douglass as EPISD's first "colored" school.

48.     This Court further observed that in 1922 Beall was one of the elementary schools "south of the tracks," in the "Mexican District," and, in 1934, Beall, Burleson, and Zavala were among eight Bowie feeder schools, all of which were predominantly Mexican-American.

49.     In *Alvarado*, to ensure that "all students within [EPISD] are provided with equal educational opportunities," this Court ordered that EPISD (i) provide transportation between certain areas and schools; (ii) redraw attendance zones; (iii) increase the number of air-conditioned predominantly Mexican-American schools; (iv) hire staff to attain the Singleton standards; (v) assign Mexican-American teachers to predominantly Anglo-American schools, and Anglo-American teachers to predominately Mexican-American schools sufficiently to meet the Singleton standards; and (vi) promote qualified minority personnel.

50.     EPISD appealed, and the United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment in *Alvarado*.

51.     In June 2017, this Court vacated the desegregation order in *Alvarado v. EPISD*. EPISD immediately began working to undo the positive effects of this Court's order by closing

schools and changing attendance zones in ways that would have been prohibited by this Court's order.

52.     Specifically, in connection with the 2018 closure of Burnet Elementary School, EPISD noted in a Frequently Asked Questions document that Burnet would have been closed as part of the 2016 Bond Project, except that "[t]he attendance zone for Burnet Elementary School could not be changed at that time due to the 1976 *Alvarado v. EPISD* case.  The *Alvarado* case required the current Bliss and Travis Elementary Schools attendance zones. It also required the current attendance zones for Burnet, Logan, and Powell Elementary Schools. The orders were vacated on June 8, 2017."

53.     EPISD's consistent and repeated history and practice of discrimination against minority students in the Chamizal area continues to occur and influences EPISD's policies, practices, decisions, and actions today.

  **B.     EPISD's Recent Cheating Scheme and Other Discriminatory Activities Deliberately Targeted the Chamizal Schools and Continue a History of Mismanagement.**

54.     Bowie High School was and is one of the most heavily minority high schools in the District, with more than 99% Hispanic students.

55.     Discrimination against Bowie students is necessarily also discrimination against the Chamizal families, including former Beall and Burleson students. Two of the Chamizal Schools are in the Bowie feeder pattern, and Bowie High School serves students who live in the Chamizal.

56.     In 2012, the Texas Education Agency appointed a board of managers to oversee EPISD for up to two years.

57.     The appointment stemmed from a scandal in which EPISD purposefully forced students out of Bowie High School and other schools in an effort to increase district funding

through improving scores on standardized tests.  These efforts were frequently targeted at Mexican-American students, incorrectly identifying students who withdrew or never enrolled in EPISD schools as having "returned to home country."

58.     The scandal involved associate superintendent James Anderson, who instructed school principals to discourage students from re-enrolling in the school, including incorrectly telling students that they were too old to enroll and telling adult students that they need a parent to enroll, causing many students to never return to school.

59.     Students who were pushed out using these tactics were incorrectly marked in EPISD's records as "returned to home country" when they in fact still lived in the United States.

60.     Students were also inappropriately retained in lower grades or advanced to higher grades in order to avoid testing.

61.     The scandal particularly impacted Bowie High School, which is in the feeder pattern for two Chamizal Schools.

62.     In 2010, State Senator Eliot Shapleigh raised concerns related to the scandal, prompting an FBI investigation of EPISD.  This FBI investigation resulted in the arrest of the Superintendent of EPISD on fraud charges to which the Superintendent pleaded guilty.  *See USA v. Garcia*, 3:11-cr-01830 (W.D. Tex. 2011), ECF No. 3.

63.     The TEA appointed a board of managers to govern EPISD for up to two years. EPISD's Board of Trustees challenged the TEA's decision with the state's Commissioner of Education, but the Commissioner upheld the TEA's decision.

64.     The board of managers was formally installed in May 2013.

65.     In June 2013, the Office of the Inspector General of the United States Department of Education ("DOE") found that EPISD's internal controls—the District's policies and

procedures that should provide reasonable assurance of compliance—were "insufficient to provide reasonable assurance of compliance with laws and regulations" and that the data submitted to the DOE from Bowie High School was unreliable.

66. Among other problems, DOE found that EPISD leadership failed to candidly acknowledge "that it had found violations of El Paso policies, potential falsifications of government documents, and improper promotion and retention of students in an effort to avoid possible Federal education accountability sanctions, among other issues."

67. In 2015, following the expiration of its complete two-year term, TEA dissolved the board of managers, and the Board of Trustees resumed its management of EPISD, including allocation of funding and management of schools.

## II. EPISD Targeted its Most Hispanic and Mexican-American Schools for Consolidation.

### A. The 2016 Bond Process

68. While the TEA-appointed board of managers was still in place, EPISD commissioned Jacobs Project Management Co. ("Jacobs"), an engineering and construction firm, to conduct a comprehensive facilities condition assessment of every campus facility in EPISD.

69. Jacobs applied its expertise and experience to assess school facilities, capacity, condition, 5-year life cycle, enrollment projections, stakeholders, and recommended development. This assessment is published as EPISD's March 2015 "State of School Facilities" report (the "Jacobs Report").

70. Jacobs developed its report in conjunction with consultants from ECM International, DeJong-Richter, and Dr. William Wachtel.

71.     The El Paso Times described the Jacobs Report as "long-overdue" and "a good tool for the incoming elected board to use in determining how to operate the district more efficiently."

72.     On or about January 21, 2015, Jacobs presented a Facilities Master Plan to the TEA-approved board of managers (the "Jacobs Plan").  This Plan was based on the research that would subsequently be published as the Jacobs Report.

73.     The Jacobs Plan recommended that sixteen schools be rebuilt, including Burleson and Douglass, that three schools receive major renovations, and that 58 schools receive "Prioritized Renovations."

74.     The Jacobs Plan advised EPISD to (i) close or repurpose twelve elementary schools; (ii) build a new campus on the property where Douglass currently exists and send Beall students to the newly built school; and (iii) build a new campus on the Burleson property and send Zavala students to the newly built school.

75.     In or about 2016, EPISD created a Facilities Advisory Committee ("FAC") comprised of community members.  The FAC originally included Hilda Villegas and Guillermo Glen, who are now respectively President and a member of Familias Unidas.  Villegas and Glen eventually resigned from their positions on the FAC in protest over EPISD's discriminatory actions towards the Chamizal Schools.

76.     Familias Unidas' community involvement on the issue of school closures began in 2016 with the consistent voicing of concerns about the environmental hazards at both Douglass and Zavala.  Familias Unidas and its predecessor organizations made numerous attempts to inform EPISD about the environmental problems in the Chamizal Schools.

77.     In response to these concerns, EPISD's FAC facilitator sent a letter to FAC members on or about July 14, 2016 stating that in response to the concerns, EPISD "has determined to undertake a study to evaluate the environmental safety of our precious children at Beall, Zavala and Douglass and take any steps necessary to ensure those children learn and grow in a safe environment."

78.     On information and belief, EPISD has never undertaken a comprehensive study to evaluate environmental hazards at Beall, Zavala, and Douglass.

79.     In August 2016, the FAC submitted a $668 million bond proposal—the largest ever in El Paso County—which was approved by the Board and voters (the "Bond Project").

80.     The Bond Project that was approved by the FAC, the Board, and EPISD voters did not involve the closure or consolidation of any of the Chamizal Schools, but also did not require funding to be allocated for construction at the Chamizal Schools.

81.     The Bond Project affected 28 EPISD schools (the "Bond Schools") and included eight potential or final consolidation projects affecting up to eighteen schools,[8] but did not mention any consolidation or closure of any of the Chamizal Schools.

82.     The Bond Project included funding for construction and improvements associated with each potential consolidation, as well as funding for ten schools without any associated consolidations.[9]

---

[8]    The project included the potential closure or consolidation of Bond, Bonham, Bradley, Clardy, Collins, Crosby, Dowell, Fannin, Hughey, Johnson, Roberts, and Schuster elementary schools; and Henderson, Lincoln, MacArthur, Morehead, Ross, and Terrace middle schools.

[9]    The project included funding for construction and improvements for Andress, Austin, Burges, Coronado, El Paso, Irvin, and Jefferson high schools; Bassett Middle School; Crockett Elementary School; and Silva Magnet School.

83.    Despite the recommendations in the Jacobs Plan that the Chamizal Schools receive substantial funding and renovations, the Bond Project did not require any funding to be allocated to the Chamizal Schools.

84.    Had EPISD implemented the Jacobs Plan, the Chamizal Schools would have been slated for closure through the Bond Project and would have received substantial funding for construction.

85.    According to the Jacobs Report, EPISD's elementary schools were, on average, at about 87% capacity, and the Chamizal Schools were, on average at about 84% of capacity utilization.

### B.    Familias Unidas' Community Involvement on Environmental Issues

86.    Environmental problems in the Chamizal have resulted in harms to students who have been forced to attend Douglass and Zavala as a result of school closures.

87.    Familias Unidas' predecessor organizations have been requesting EPISD to assess and address environmental problems in local schools since their formation in 2016.

88.    In response to environmental concerns, in or about October 2016, Dr. William Hargrove, the Director for the Center for Environmental Resource Management at the University of Texas El Paso ("UTEP"), performed a study of soil from playgrounds of Douglass, Beall, and Zavala as well as several nearby locations.

89.    The UTEP study found "moderate to high" lead levels in the soil at the Douglass and Zavala playgrounds and high levels of copper in soil near Douglass.

90.    Both Dr. Hargrove and Dr. Wen-Whai Li, a Professor of Civil Engineering at UTEP who specializes in, among other areas, air pollution monitoring and health risk assessments, contacted EPISD on multiple occasions from February 2017 to February 2018 to discuss air quality monitoring at Beall, Douglass, and Zavala as well as monitoring for a

proposed bus hub at Bowie High School.  EPISD declined to commit to an air quality study of the Chamizal Schools at that time.

91.     In conjunction with EPISD's attempts to close Chamizal Schools, EPISD decided to move their Central Bus and Operations Hub to the Bowie High School campus. This move will further decrease air quality in the Chamizal.  On or about April 3, 2018, one of Plaintiff's predecessor organizations submitted a complaint under Title VI of the Civil Rights Act of 1964 discussing the discriminatory impacts that relocating this Bus Hub would have on Hispanic students at Bowie High School as well as on the greater Chamizal community.

### C.     The Announcement of Further School Closures

92.     In May 2018 then-Board President Trent Hatch announced that the District intended to close additional schools.  Hatch explained that schools with 65% or lower capacity utilization were candidates for closure.

93.     EPISD claimed that the additional closures were needed to balance the District's budget.

94.     There was no reasonable basis for EPISD to close further schools.  Rather, the closure of schools in 2019 was a response to a "manufactured crisis," as affirmed by then-Trustee Susie Byrd.

95.     EPISD's Board treated the 2019 closures very differently from the Bond Project, as explained by the-Trustee Susie Byrd.  During the 2019 closures, EPISD was "less transparent, less willing to engage the public in confronting our challenges and less willing to hold ourselves and administration accountable," as affirmed by then-trustee Susie Byrd.

96.     On or about June 11, 2018, Beall parents learned from a leaked email obtained by the El Paso Times that EPISD was again targeting their children's schools for closure.

97.    After the El Paso Times reported on the possible closures, the District scheduled two public meetings on June 18 and 19, 2018, to permit public comment on the closures. The District scheduled a vote for three days later, June 21, 2018.

98.    All of El Paso's six state legislators wrote to the Board with "serious concerns" about the proposed closures, questioning the existence of a budget deficit and the need to close the schools, and described the proposal as a "regress[ion]" from the Bond Project.

99.    On or about June 12, 2018, Dr. Debra Niemeier, an air quality expert from the University of California at Davis, submitted a letter detailing air quality concerns at each of the Chamizal Schools and the effects of these air quality concerns on children. This letter particularly highlighted concerns regarding the truck traffic adjacent to Zavala, and concluded that "based on the current science, it is irresponsible to locate children in schools close to heavily traveled roads and certain types of industrial concerns without 1) assessing the potential air quality effects, and 2) mitigating current and new site location air quality impacts."

100.    On or about June 19, 2018, one of Plaintiff's predecessor organizations submitted a complaint through EPISD's internal grievance procedures, complaining of violations of Title VI, the Americans with Disabilities Act, and the Rehabilitation Act, including environmental risks to children present at both Douglass and Zavala Elementary Schools.

101.    The Board was scheduled to vote on the closures on June 21, 2018.  At the Board meeting, then-President Hatch announced that the vote would no longer take place at that meeting and that the Board would not accept any public comments on the subject.  According to Hatch, the Board recognized that more planning and community engagement were necessary before closing schools and said EPISD's "focus and priority is and always will be the children of El Paso."

102.    The District dismissed the June 19 complaint following an appeal to the superintendent, stating that it was "moot due to the [Board] not taking action on closure of any schools" at the time.

**D.    *Recalculating Capacity to Target Hispanic and Mexican-American Schools***

103.    Unsatisfied with the results of the Bond Project, which would leave open the heavily-minority schools that EPISD wanted to close, EPISD ignored the expertise of the engineering firm, whose report had been commissioned by the now-dissolved Board of Managers, and decided to prepare its own report (the "EPISD Report").

104.    The EPISD Report purportedly identified schools operating below capacity so that those schools could be slated for consolidation or closure.

105.    To calculate capacity, the Jacobs Report had employed a "functional capacity" approach.  Utilizing its extensive expertise as an engineering firm to create the report, Jacobs calculated the capacity of each school in a way that accounted not just for number of classrooms, but also for a variety of other factors including classroom size and classroom purpose.

106.    Unlike the Jacobs Report, which relied upon the engineering firm's extensive knowledge of the industry to calculate capacity, the EPISD Report simply multiplied the number of classrooms by the arbitrary number of seventeen students per classroom.

107.    In the EPISD Report, for purposes of determining supposed capacity, a classroom was treated the same regardless of size, whether the classroom was for general education or special education or students with severe disabilities, and whether the classroom was for native English speakers or English-language learners.  All classrooms were considered to be able to accommodate seventeen students, no more and no less, despite variation in classroom physical size, intended classroom purpose, needs of the students served, and other classroom needs.

108.    In preparing the EPISD Report, EPISD disregarded the calculation of its expert, as set forth in the Jacobs Report, and applied an arbitrary, capricious, rudimentary, insufficient, and inaccurate calculation that served no purpose other than to justify the closure of the schools EPISD wanted to close.

109.    According to the EPISD Report, 22 out 55 EPISD elementary schools were below 65% capacity during the 2018 through 2019 school year, placing 40% of EPISD elementary schools below the closure threshold.  This large number of elementary schools below the 65% threshold offered EPISD a facial justification for choosing among a large number of EPISD schools for closure.

110.    According to the EPISD Report, twenty-two schools, including Beall, Burleson, Douglass, Zavala, and Alta Vista were below 65% capacity during the 2018 to 2019 school year. Other than those five schools, the following seventeen schools were below 65% capacity: Aoy, Barron, Bliss, Cooley, Crockett, Crosby, Moye, Hughey, Johnson, Lamar, Newman, Roberts, Rusk, Schuster, Travis, Whitaker, and White elementary schools (the "Low Capacity Schools").

111.    Burleson Elementary School—one of the three Closed Schools—was below 65% capacity utilization according to EPISD's report, but would have been *above* 65% capacity utilization during the 2018 to 2019 school year—and therefore not eligible for closure—had EPISD utilized the capacity methodology applied in the Jacobs Report.  In sharp contrast, according to the EPISD Report, Burleson was at just 49% capacity utilization.

### E.    *Defendants' Consideration of the Discriminatory Closures*

112.    On December 6, 2018, EPISD staff presented the EPISD Report to the Board. EPISD staff recommended the closure of Burleson, Beall, Alta Vista, and Schuster elementary schools.

113.    According to district policy, members of the public providing public comments are allotted three minutes to speak.  Further, the Board Operating Procedures Handbook, which elaborates policies pertaining to the Board, provides that if "additional time [is] needed for all speakers to address the Board, the Board may designate a future meeting."  However, instead of giving everyone the opportunity to address the Board on the important issue of school closures, the Board reduced the speaking allotment to just 1.5 minutes per person.

114.    At the December 6, 2018 Board meeting, several parents of students at Beall Elementary School spoke, but not one Burleson parent spoke because parents at Burleson were still largely or entirely unaware of the closure proposals.

115.    EPISD subsequently scheduled community meetings for the purpose of sharing information with the community concerning the closures.  EPISD repeatedly provided the public with incorrect information concerning the meeting times and rescheduled the meetings, creating confusion and scheduling difficulties for parents and severely limiting the ability of the interested public to comment on the closures.

116.    At the community meetings, parents from Alta Vista, Beall, and Burleson elementary schools criticized EPISD for failing to listen to their concerns; expressed frustration over the lack of community involvement in the decision-making process (unlike the Bond Project, in which EPISD convened a committee of community members to assist in the decision-making process); expressed concerns about student safety and inadequate transportation to Zavala, Douglass, and Coldwell; and underscored the importance of the schools to the local communities.

117.    Under the proposed plan to close Burleson that was presented to the Board, the newly-drawn attendance zones would require students to cross highway 54 to travel to Zavala

Elementary School.  Highway 54 lies between Burleson and Zavala and is a major artery for travel and a hazardous route for students to cross to get to school.

118.     At the Burleson parent meeting, Trustee Velarde admitted that he was initially shocked by the route that kids would have to walk to get to school, but reconsidered when he realized that some students who attend the Chamizal Schools already had to make this dangerous walk.

119.     In contrast, EPISD staff at the Alta Vista meeting highlighted that the Alta Vista consolidation would be accompanied by rezoning certain schools in that area so that no child would need to cross Highway 54.

120.     EPISD's approach to Highway 54 for the Chamizal Schools stands in stark contrast to EPISD's general treatment of schools with a greater percentage of white students.

121.     For example, EPISD eliminated consideration of Rivera Elementary School for closure.  According to EPISD, Rivera was eliminated as a closure candidate because if Rivera were closed, it would be impossible to adjust attendance zones to account for major roadways.

122.     No roads near Rivera carry traffic that is comparable to Highway 54.

123.     Rivera has a significantly lower percentage of Hispanic students than Beall, Burleson, and Alta Vista.

124.     In fact, EPISD's approach to Highway 54 for Zavala and Douglass differs dramatically from its approach for every other school near the Mexican border: within 4 miles of the border, EPISD's attendance zones almost perfectly follow Highway 54, ensuring that no student will need to cross the major throughway.  However, this perfect alignment ends at the Chamizal Schools, the schools nearest to the border.  For the Chamizal Schools, Highways 54,

110, and 62 all cut right through the heart of its current attendance zones, forcing students to cross dangerous highways.



## School Attendance Zones
### El Paso, Texas

El Paso County Appraisal District Parcel Shapefile, TIGER/Line Shapefile - US Census Bureau, Esri, HERE, Garmin, (c) OpenStreetMap contributors, and the GIS user community

125.    This treatment of Highway 54, like EPISD's treatment of closures, again falls along racial lines.

126.    The schools within four miles of the Mexican border with attendance zones that cleanly trace Highway 54 such that students do not need to cross the highway are Coldwell, Hillside, Crockett, Rusk, Travis, and Bliss elementary schools.

127.    Meanwhile, Highways 62, 110, and 54 cut straight through the heart of the Zavala and Douglass attendance zones.  In fact, the vast majority of the Zavala attendance zone lies on the other side of Highway 54 from Zavala.  Before Burleson was closed, Zavala and Douglass each lay on opposite sides of Highway 54, reducing the need for students to cross the major highway.

128.    Zavala and Douglass both have nearly 100% Hispanic students.  Meanwhile, Coldwell, Hillside, Crockett, Rusk, Travis, and Bliss all have a lower percent of Hispanic students than Zavala and Douglass, with, on average, about 86% Hispanic students, and about 37 times the rate of white students as Zavala and Douglass.



129.    The community meeting with Beall was held entirely in Spanish and included comments and questions from Spanish-speaking parents directed to EPISD staff.

130.    Trustee Geske represented the area encompassing Beall and attended the Beall community meeting.  However, Trustee Geske does not speak Spanish and was not provided with a translator.  As a result, Spanish-speaking parents were not able to provide any input to their elected representative on the Board at the Beall community meeting.

131.    EPISD staff ended the Burleson community meeting without giving all parents present the opportunity to speak.

132.    In reality, the community meetings were designed for nothing more than public relations.  When the Board had originally sought to close Beall for the second time in June 2018, teachers at Beall were told to start packing up their classrooms, before the Board meeting that had been scheduled to vote on the closure—then scheduled for June 21—had even taken place. Indeed, the Board did not have the option of keeping Burleson and Alta Vista open: the Board was presented with just two options for closure, and Burleson and Alta Vista were to be closed as a part of either plan.

133.    On information and belief, EPISD took no action in response to comments received in December 2018 and January 2019 related to the closures.  Many of the concerns expressed by parents at those meetings have proven to be correct.

F.    **EPISD Approved the Discriminatory Closures of Beall, Burleson, and Alta Vista**

134.    On January 22, 2019, counsel for Familias Unidas's predecessor organization submitted a letter to the Board informing them that a vote to close Beall and Burleson would likely violate Title VI of the Civil Rights Act and EPISD's own policies against discrimination.

135.    On January 22, 2019, the Board was representative of only a narrow slice of EPISD's community and did not at all represent the schools whose fate it was deciding.  At the time of the vote, the Board was comprised of six members: Bob Geske, Al Velarde, Diane Dye, Chuck Taylor, Trent Hatch, and Mickey Loweree.

136.    EPISD Board seats are allocated for election among seven voting districts, each of which are comprised of about 7 to 14 schools.

137.    At the time of the meeting, the seat on the Board which represented Alta Vista Elementary School, which the Board was about to vote to close, was vacant.  A community member requested that the Board postpone its vote on the closure until the Alta Vista seat was filled; instead, the Board voted to leave the seat unfilled for months and proceeded to vote to close the unrepresented Alta Vista Elementary School.

138.    On information and belief, at the time of the January 22, 2019 vote, just one out of six of the Board members—17% of the Board—was Hispanic, and four—67%—were white, in a virtual inversion of EPISD's student body, which was about 84% Hispanic in the 2018 to 2019 school year, and just about 9% white.

139.    At the January 22, 2019 Board meeting, the Board again reduced the time allocated for speakers from the three minutes provided by policy, contrary to the Board Operating Procedures Handbook which provides that speakers shall receive three minutes, and if "additional time [is] needed for all speakers to address the Board, the Board may designate a future meeting."

140.    At the January 22, 2019 meeting, no translator was provided to assist monolingual English Board members understand Spanish comments from the public, or to help monolingual Spanish-speakers understand English comments from the public or Board.  Without any

translation, Spanish-speaking national origin and racial minorities were entirely prohibited from commenting on this significant decision or having their comments heard or considered by non-Spanish-speaking Board members.

141.    At the January 22, 2019 meeting, English-speaking Board members failed to listen to or consider the comments of Spanish-speaking parents, despite the fact that the census reveals that about 95% of parents in the area of the Chamizal Schools speak Spanish at home. This limitation almost exclusively targets Hispanic and Mexican-American families and operates as a proxy for race and national origin.

142.    A substantial portion of public comments at the January 22, 2019 meeting were in Spanish.

143.    On January 22, 2019, the Board voted to close three schools to which the Bond Project did not allocate any mandatory funding: Alta Vista, Beall, and Burleson elementary schools.[10]

144.    Despite the Jacobs Plan's recommendation that Beall not be closed until Douglass was rebuilt and that Zavala close only after Burleson was rebuilt, the January 2019 closures were decided without any plan for or commitment to construction of new school facilities.

---

[10]    EPISD also voted to close Schuster Elementary School at the January 22, 2019 meeting. However, Schuster was already slated for consolidation, construction, and improvements as part of the Bond Project, and once the $28.3 million construction project is complete, Schuster students will attend the newly-constructed Arcadio Duran Elementary School. One year prior, on January 16, 2018, the Board voted to close Burnet Elementary School. However, Burnet would have been closed as part of the Bond Project had EPISD not been prohibited from doing so by this Court's order in *Alvarado v. EPISD*; indeed, EPISD did not even include Burnet in its capacity calculation for purposes of determining which schools to close.

### G.    EPISD Closed its Most Hispanic and Mexican-American Schools

145.    The EPISD Report and EPISD's purported 65% capacity utilization threshold for closing schools gave EPISD flexibility to choose among a large number of schools to close. However, among the schools that met EPISD's criteria for closure, the three schools EPISD targeted for closure were among the most Hispanic and Mexican-American elementary schools in the District.

146.    The Closed Schools on average had 99% Hispanic students and served among the highest concentrations of Hispanic children in EPISD.  Meanwhile, the Low Capacity Schools on average had about eighteen times the rate of white students as the Closed Schools, and had only about 85% Hispanic students.



147.    The Closed Schools are similarly-situated to the Low Capacity Schools.  Both the Jacobs Report and EPISD Report demonstrate that, on average, the Low Capacity Schools used approximately the same amount of their capacity as the Closed Schools.

148.    One of EPISD's purported rationales for closing schools was to reduce expenditures.  However, the Closed Schools were not spending more money than similarly-

situated schools.  In fact, EPISD actually saved money at the Closed Schools compared to the

Low Capacity Schools and allocated approximately $150 *less per student* to the Closed Schools

than the Low Capacity Schools.

149.    The Closed Schools did not receive substantial funding for construction in

connection with the closures, unlike the whiter schools that were scheduled for potential closure

as part of the Bond Project.  The Bond Schools that were elementary schools and slated for

potential closure and consolidation had about nineteen times the concentration of white students

as the Closed Schools.



150.    Although Jacobs had recommended that significant funding be provided to

improve the Chamizal Schools, neither the 2019 closure decision nor the Bond Project required

funding to be provided for construction or improvements at the Chamizal Schools.

151.    Only one fact explains EPISD's choice to close the Closed Schools over the Low

Capacity Schools without associated funding for construction: the Closed Schools were less

white and more Hispanic and Mexican-American than the Low Capacity Schools.

152.    Rather than providing funding for construction of new schools or renovation of existing schools in connection with the closures of the Closed Schools, EPISD sent Beall and Burleson students to Douglass and Zavala elementary schools.

153.    Both Douglass and Zavala (i) were built in the 1920s, (ii) are among EPISD's oldest schools, and (iii) required significant maintenance, including the repair of such basic but vital problems as cracked drains, damaged and leaking roofing, windows that are unable to open posing a potential fire hazard, and building controls (*e.g.*, air conditioning systems) past their useful life.

154.    EPISD's failure to provide funding to the Chamizal Schools for construction comparable to that provided to their less Hispanic and Mexican-American counterparts that were slated for potential closure through the Bond Project, is consistent with longstanding EPISD practice of providing less funding to the Chamizal Schools and schools with greater percentages of Mexican-American students.

155.    EPISD, by vote of its Board, has regularly allocated less per capita state and local funding to schools with greater percentages of Hispanic or Mexican-American students than it allocates to similarly-situated schools with greater percentages of white students and lesser percentages of Mexican-American students.

### H.    *The District's Internal Complaint Process*

156.    On or about April 16, 2019, Familias Unidas's predecessor organizations, Beall Parents Committee and Burleson Parents Committee, filed a complaint with the District regarding premature closure actions occurring at their schools through the District's internal complaint procedures.

157.    After meeting with members of the committees, the principals of Beall and Burleson sent written decisions regarding the complaint on or about May 13, 2019.

158.    On or about May 22, 2019, Beall Parents Committee and Burleson Parents Committee appealed the principals' decisions.

159.    On or about May 30, 2019, EPISD staff again met with the parents' committees. At the meeting, some parents expressed their concerns related to the grievance in Spanish.  On or about June 10, 2019, the District responded to the appeal.

160.    Beall and Burleson both shut their doors in May 2019.

161.    On or about June 24, 2019, Beall Parents Committee and Burleson Parents Committee appealed the assistant superintendent's decision to the Board.

162.    The Board was provided with a packet of materials concerning the appeal, which included transcriptions of audio tapes recorded at the lower grievance levels.

163.    The District included the statements of English speakers in the transcripts provided to the Board but failed to translate or even transcribe the vast majority of the Spanish dialogue from the audio tapes.  As a result, the Board was unable to access transcripts of the vast majority of the comments of Spanish-speakers.

164.    On August 20, 2019, the Board considered and formally denied the complaints.

### I.    *The Board's Reconsideration of the Closures*

165.    Later on August 20, 2019, after denying the complaints, the Board again convened to decide whether to reconsider its decision to close Beall and Burleson.  Numerous members of the community, including El Paso elected officials and community leaders, spoke in favor of reopening Beall and Burleson to ensure the safety of students.

166.    Between the January 2019 and August 2019 votes on the fate of Beall and Burleson, the composition of the Board of Trustees had changed substantially.  Josh Acevedo was elected to the empty seat representing Alta Vista Elementary school.  Former Board President Trent Hatch resigned following allegations that he did not live in the district he

represented.  Freddy Khlayel-Avalos was elected to Hatch's seat, and Bob Geske replaced Hatch as president of the Board.  Daniel Call was elected to the seat of former trustee Mickey Loweree. In July 2019, all three new Board members toured the area surrounding the Chamizal Schools.

167.    Although EPISD knew that many members of the community would likely address the Board in Spanish, EPISD failed to provide a translator at the August 20, 2019 meeting to reconsider the closure of Beall and Burleson.

168.    A majority of Board members were not able to understand Spanish well.  Without a translator, the majority of the Board could not understand comments from Spanish-speakers, and Spanish-speakers were unable to be considered by the majority of the Board.

169.    Defendant Bob Geske, the President of the Board, and the Board member who was elected to represent Beall and Douglass elementary schools, did not speak or understand Spanish well.

170.    Several members of the community addressed the Board in Spanish.  The superintendent, Juan Cabrera, partially translated just one parent's comment, but most Spanish comments went untranslated.

171.    One community member and member of Familias Unidas, after trying to speak in English, cried out: "I need translation, please.  I need translation."  Her request went unanswered by the Board, and she delivered her comment in Spanish.

172.    The following speaker offered to translate so the Board could understand what the previous speaker had said, but the Board declined her offer, stating that she would need to use her two minutes for her own comments.[11]

---

[11]    The State of Texas subsequently recognized the discriminatory nature of refusing to allow speakers who require translators appropriate accommodations during public

173.    As a result of the lack of a translator, parents who chose or were only able to speak in Spanish were not able to be heard or considered by the majority of the Board.

174.    At the August 20, 2019 Board meeting, members of the public were permitted only two minutes to speak, contrary to district policy which allows three minutes to speak and provides for continuance to a future meeting time if more time is required.

175.    At the August 20, 2019 Board meeting, the EPISD Chief of Staff claimed that EPISD had done adequate environmental monitoring of the Chamizal Schools.  For the first time he asserted that the Texas Commission on Environmental Quality issued reports that concluded that particulate matter "would not be expected to cause adverse acute health effects, vegetation effects, or odors," "would not be expected to cause adverse health effects," and "would not be expected to cause long term adverse human health or vegetation effects."

176.    However, the Chief of Staff omitted an important fact: the report he referenced had nothing to do with the Chamizal Schools.  Rather, the report he was referring to was neither prepared in conjunction with EPISD nor based on air quality data from any affected campus, and therefore does not help EPISD or the public understand the potential environmental risks at EPISD campuses.

177.    EPISD's Chief of Staff proceeded to misrepresent statements from Familias Unidas's predecessor organizations, public comments from parents, and counsel for predecessor organizations as well as previous communications between EPISD and UTEP scientists, in order

comments by codifying section 551.007 of the Texas Government Code, which requires that the Board provide "a member of the public who addresses the body through a translator . . . at least twice the amount of time as a member of the public who does not require the assistance of a translator in order to ensure that non-English speakers receive the same opportunity to address the body."  In this case, not only did the Board not allow additional time, but the Board did not offer translation at all.

to incorrectly assure the Board that EPISD had done its due diligence in performing and

attempting to perform environmental studies.  Counsel for Familias Unidas requested a chance to

rebut these assertions but was not allowed to do so.

178.    At the August 20, 2019 Board meeting, the three newly-elected members of the

Board voted to conduct an environmental impact study of the Chamizal area, which would have

facilitated ensuring student safety in the area, particularly in light of the school consolidations.

The vote failed to pass, with all of the previous members of the Board voting against it.

179.    At the August 20, 2019 Board meeting, two newly-elected members of the

Board—Trustee Acevedo and Trustee Khlayel-Avalos—voted to reopen Beall and Burleson.

The vote again failed to pass, with all of the previous members of the Board voting against it.

180.    On August 23, 2019, the Superintendent released a statement declaring, among

other things:

> EPISD wants to make one thing clear: both Zavala and Douglass
> elementary schools are safe learning facilities for students. They
> have been studied by researchers from the University of Texas at El
> Paso and the Texas Commission on Environmental Quality who
> have determined that contamination is not a factor anywhere on
> either campus.

181.    However, the TCEQ report referenced by the superintendent was the same report

referenced by the Chief of Staff, and does not help EPISD or the public understand the potential

environmental risks at EPISD campuses.

182.    Despite repeatedly requesting this information starting in 2016, EPISD has failed

to produce to Familias Unidas any study other than Dr. Hargrove's soil sampling which takes

measurements or specifically analyzes environmental hazards at the Chamizal Schools.

183.    On December 17, 2019, the Board voted to approve a resolution authorizing the

superintendent or his designee to begin accepting offers to purchase, lease, or use the Beall and

Burleson campuses, specifically, Beall Elementary School, 320 S. Piedras Street, Lots 17 thru 32

of Block A, and Lots 1 thru 16 and 20ft X 100 ft adj. on South, Block 1, East El Paso Addition;

and Burleson Elementary School, 4400 Blanco Avenue, E.R Talley Survey 6 & 7, Abst #180,

and Tract 2, Block 1, Federal Park Replat A (together, the "Disputed Property").

> **J.      Hispanic and Mexican-American Students Have Suffered and Continue to
> Suffer as a Result of the Closures.**

184.    Both before and following the closures of Beall and Burleson, the concerns of

parents that had been raised regarding the closures came to fruition and have harmed students'

education.

185.    In Spring 2019, when EPISD began the process of closing the schools, including

removing books from the library and readjusting staffing, students at Beall and Burleson

experienced significant drops in grades.

186.    Following the closure of Beall and Burleson Hispanic and Mexican-American

students and families were injured by: (i) Zavala Elementary School's inability to accommodate

all the students who were supposed to attend it under the rezoning, requiring some children to

attend Hawkins Elementary or other elementary schools; (ii) some children being forced to

endure 2 to 3 hour round-trip commutes to school each day; (iii) overcrowding and large class

sizes; (iv) teachers and staff leaving due to poor conditions at the schools, causing insufficient

staffing of teachers and bus staff, and large numbers of students per teacher; (v) reduced

availability of extracurricular activities; and (vi) continued concerns related to student safety,

including exposure to environmental hazards, at Douglass and Zavala elementary schools.

187.    The closures and consolidations have also resulted in significant personal impacts

to parents and students, including devastation to the local community from the closure of Beall

and Burleson, which are central parts of the Chamizal and Jefferson communities.

188.    The personal impacts to students and parents stemming from the closures have caused nightmares, difficulty sleeping, anxiety attacks, drops in grades, and emotional outbursts such as crying, in students who formerly attended Beall and Burleson and did not experience such problems before the closures.

189.    The location of Douglass is unsafe for students.  Douglass's playground is less than 300 feet from the nearest actively used industrial site, less than half a mile from EPISD's new central bus hub currently under construction at Bowie High School, and adjacent to both a dangerous canal and railroad tracks.  The locations of Beall and Burleson are safer for students than the location of Douglass.

190.    The location of Zavala is unsafe for students.  Zavala is enclosed on two sides by busy highways.  The highway is less than 100 feet from the Zavala building, and is subject to daily heavy traffic, including trucks idling on the highway and creating significant localized pollution as they wait to cross the Mexican border.  The locations of Beall and Burleson are safer for students than the location of Zavala.

191.    Following the closures of Beall and Burleson, students in the Chamizal are regularly required to make dangerous commutes to school, including walking across bridges over dangerous highways that shake and tremble when semitrucks barrel beneath them; are littered with glass, garbage and debris; and have large chunks of dangerous glass obstructing ingress and egress to the bridge and school; and experience significant amounts of criminal activity.

192.    Physical access to Zavala Elementary School from the pedestrian bridge over highway 110 is unpaved, and at times includes large puddles of standing water on wet and rainy days, and such puddles often include dangerous debris, such as large chunks of glass.

193.    Students at more white schools in EPISD do not experience environmental and safety hazards as prevalently as the Chamizal Schools because EPISD does more to protect students at schools with greater concentrations of white students.

194.    The dangerous and long commutes for students in the Chamizal and other schools with greater percentages of Hispanic or Mexican-American students are exacerbated by the school providing fewer and less adequate transportation options, including fewer and less thorough transportation routes, compared to less Hispanic and Mexican-American schools.

195.    EPISD insufficiently staffs Douglass and Zavala for the number of students that the schools now accommodates, resulting in understaffing, large numbers of students per staff member, and regular staffing of substitute teachers, all factors which, together, impact the ability of teachers and staff to ensure student safety and quality education.

196.    The insufficient staffing of Douglass and Zavala includes insufficient nurses; at the Chamizal Schools, school nurses are only on campus some days of the week.

197.    The closures and consolidations have resulted in diminished educational quality, diminished educational opportunities, and significant financial and emotional harms to parents and students.

198.    For example, as a result of problems associated with the closures of Beall and Burleson, Cemelli de Aztlan, a lecturer at the University of Texas El Paso and a member of Plaintiff's board, moved to a different neighborhood.  In her new neighborhood, Ms. De Aztlan now faces the hurdle of paying about $200 more in rent each month than she would have paid in the Chamizal area.  Had Beall and Burleson stayed open, Ms. De Aztlan and her children would have remained in the Chamizal area.  Moreover, not only are the problems associated with the closures of Beall and Burleson so great that she is willing to suffer financial difficulty to avoid

those problems, but she has also accepted being separated from her previously well-established community safety net in the Chamzal in order to avoid the myriad difficulties stemming from EPISD's discriminatory decision.  However, Ms. De Aztlan views these hurdles as well worth it, to protect her children from the difficulties imposed on students and parents as a result of the closures.

199.    The closures have posed significant safety risks to students at Douglass and Zavala and have exacerbated the pre-existing and long-standing discriminatory practices of EPISD against the Chamizal neighborhood.

200.    Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' actions described in this complaint if not enjoined by the Court. Plaintiff's members have also suffered, are suffering, and will continue to suffer irreparable injury as a result of Defendants' actions and would have standing to sue in their own right.

## CAUSES OF ACTION

## COUNT I: VIOLATIONS OF THE EQUAL PROTECTION CLAUSE
### AS ENFORCED BY 42 U.S.C. § 1983

201.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

202.    The Fourteenth Amendment to the United States Constitution provides that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

203.    EPISD, through its Board, intentionally discriminated against students who attended Beall and Burleson, as well as their families, on the basis of their race and/or national origin in violation of the Fourteenth Amendment.

204.    Defendants purposefully discriminated and/or continue to discriminate on the basis of race and/or national origin against Hispanic and Mexican-American parents and students by:

a)    Manipulating capacity measurement criteria to promote closure of schools with more Mexican-American students and in more Mexican-American neighborhoods, and preventing closure of schools with more white students and in more white neighborhoods.

b)    Closing and consolidating the Chamizal Schools without closing similarly-situated whiter schools;

c)    Closing and consolidating the Chamizal Schools without providing funding for construction of new facilities, when similarly-situated schools with a greater percentage of white students that were slated for closure also received funding for construction of new facilities;

d)    Failing to provide translation for Spanish-speaking parents of important meetings and documents, which has (i) prevented monolingual Spanish-speaking parents from understanding important comments and information by English speakers, including staff and trustees; and (ii) prevented monolingual Spanish-speaking parents from providing meaningful input on important district-wide issues on which English-speaking parents may provide meaningful input, including school closures.

e)    Allocating less funding to the Chamizal Schools compared to similarly-situated schools with a greater percentage of white students; and

f)    Failing to take appropriate steps to ensure safety at the Chamizal Schools and other schools with a high percentage of Hispanic and Mexican-American students, including preventing students from being exposed to environmental hazards and ensuring students are able to safely commute to school.

205.    At all relevant times, Defendants were acting or purporting to act under color of state law.

206.    Plaintiff has no adequate remedy at law.

**COUNT II: VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT**

207.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

208.     Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.* ("Title VI"),

provides that "No person in the United States shall, on the ground of race, color, or national

origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination

under any program or activity receiving federal financial assistance."

209.     Defendant EPISD operates programs in receipt of federal funds and are thus

covered by Title VI's prohibition on race and national origin discrimination.

210.     The United States Department of Justice, which oversees enforcement of and

compliance with Title VI by recipients of federal funds, issued guidance entitled *Guidance for*

*Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin*

*Discrimination Affecting Limited English Proficient Persons*, 67 F.R. 41455 (June 18, 2002),

which states that "Under DOJ regulations implementing Title VI of the Civil Rights Act of 1964,

42 U.S.C. § 2000d, *et seq.*, (Title VI), recipients of Federal financial assistance have a

responsibility to ensure meaningful access to their programs and activities by persons with

limited English proficiency."

211.     A January 7, 2015 "Dear Colleague" letter written jointly by the DOE's Assistant

Secretary for Civil Rights and the USDOJ Acting Assistant Attorney General for Civil Rights

provided guidance concerning the importance of providing access to LEP parents of public

school children, stating:

> School districts and [State Educational Agencies] have an obligation
> to ensure meaningful communication with LEP parents in a
> language they can understand and to adequately notify LEP parents
> of information about any program, service, or activity of a school
> district or SEA that is called to the attention of non-LEP parents.  At
> the school and district levels, this essential information includes but
> is not limited to information regarding: language assistance
> programs, special education and related services, IEP meetings,
> grievance procedures, notices of nondiscrimination, student
> discipline policies and procedures, registration and enrollment,

report cards, requests for parent permission for student participation in district or school activities, parent-teacher conferences, parent handbooks, gifted and talented programs, magnet and charter schools, and any other school and program choice options. . . . It is not sufficient for the staff to merely be bilingual.

212.  EPISD is aware that a significant portion of the parents within its geographical boundaries do not speak English.

213.  EPISD is aware that a significant portion of the parents within the Chamizal neighborhood do not speak English.

214.  Defendants purposefully discriminated and/or continue to discriminate on the basis of race and/or national origin against Hispanic and Mexican-American parents and students by:

a)  Manipulating capacity measurement criteria to promote closure of schools with more Mexican-American students and in more Mexican-American neighborhoods, and preventing closure of schools with more white students and in more white neighborhoods.

b)  Closing and consolidating the Chamizal Schools without closing similarly-situated whiter schools;

c)  Closing and consolidating the Chamizal Schools without providing funding for construction of new facilities, when similarly-situated schools with a greater percentage of white students that were slated for closure also received funding for construction of new facilities;

d)  Failing to provide translation for Spanish-speaking parents of important meetings and documents, which has (i) prevented monolingual Spanish-speaking parents from understanding important comments and information by English speakers, including staff and trustees; and (ii) prevented monolingual Spanish-speaking parents from providing meaningful input on important district-wide issues on which English-speaking parents may provide meaningful input, including school closures.

e)  Allocating less funding to the Chamizal Schools compared to similarly-situated schools with a greater percentage of white students; and

41

f)      Failing to take appropriate steps to ensure safety at the Chamizal Schools and other schools with a high percentage of Hispanic and Mexican-American students, including preventing students from being exposed to environmental hazards and ensuring students are able to safely commute to school.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.     declare that Defendants have violated, continue to violate, and threaten to violate the laws of the United States as described above;

2.     issue a permanent injunction—

    a.     enjoining EPISD from selling, leasing, exchanging, or otherwise encumbering the Disputed Property;

    b.     requiring EPISD to reopen Beall and Burleson;

    c.     requiring EPISD to provide funding to the Chamizal Schools for updates and construction consistent with that provided to other schools in the Bond Project;

    d.     requiring EPISD to conduct testing and remediation to ensure safety, including environmental safety, at the Chamizal Schools;

    e.     requiring EPISD to ensure student safety at the Chamizal schools, including (i) changing the attendance zones for the Chamizal Schools to ensure that no student is required to cross Highways 54, 110, or 62 to attend the school in their attendance zone; (ii) providing sufficient staffing to ensure student safety; (iii) making improvements to Chamizal School facilities, including modern HVAC systems with air filtration for ultrafine particulate matter; (iv) implementing pollution mitigation barriers at the

Chamizal Schools; and (v) adding fencing to prevent students from being injured by hazards, including the canal near Douglass; and

f.   requiring EPISD to implement policies and procedures to ensure adequate communication with Spanish-speaking parents, including translation at Board meetings and translation of documents and any information that is provided to English-speaking parents;

3.   appoint a monitor to ensure EPISD's compliance with this Court's order;

4.   award Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

5.   grant such other relief as the Court deems appropriate.

Dated: June 15, 2020                     Respectfully submitted,

                                         TEXAS RIOGRANDE LEGAL AID, INC.


                                         _____
                                         Robert H. Rankin (N.Y. Bar # 5508585)
                                         Margaret Barnes* (Bar # 24114160)
                                         1331 Texas Avenue
                                         El Paso, Texas 79901
                                         T: (915) 585-5100
                                         F: (915) 544-3789
                                         rrankin@trla.org
                                         mbarnes@trla.org
                                         * Application for admission pending.

                                         Julia Renee Longoria (Bar # 24070166)
                                         1111 N Main Ave
                                         San Antonio, Texas 78212
                                         T: (210) 212-3700
                                         F: (210) 229-9328
                                         jlongoria@trla.org

                                         Peter E. McGraw (Bar # 24081036)
                                         1206 E Van Buren St
                                         Brownsville, Texas 78520
                                         T: (956) 982-5540
                                         F: (956) 541-1410
                                         pmcgraw@trla.org

                                         *Counsel for Plaintiff*