## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **FAMILIAS UNIDAS POR LA** | § | |
| **EDUCACIÓN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-170-DB** |
| | § | |
| **EL PASO INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER DENYING EL PASO INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant El Paso Independent School District's ("EPISD") Motion for Summary Judgment, filed on May 10, 2022. ECF No. 87. EPISD argues that Plaintiff Familias Unidas Por La Educación ("Familias Unidas") lacks evidence to support its Complaint and that the Court should dismiss its suit. Mot. for Summ. J. 2, ECF No. 87. Familias Unidas filed a timely Response, ECF No. 104, and EPISD filed a timely Reply, ECF No. 107.

This case stems from a decision by EPISD in 2019 to close three elementary schools—Beall, Burleson, and Alta Vista—in or near Chamizal, a "working-class, immigrant, Mexican-American" neighborhood. Am. Compl. 1–2, 5 ECF No. 24. Familias Unidas argues that in making that decision, EPISD violated the Equal Protection Clause and Title VI by intentionally discriminating against Hispanic and Mexican American students and families on the basis of race. Id. at 44–47. EPISD maintains that Familias Unidas' Complaint contains no evidence of intentional discrimination and that the decisions to close the elementary schools in 2019 was a "reasonable decision following consideration of many relevant factors." Mot. for Summ. J. 6, ECF No. 87.

The Court finds that Familias Unidas has produced evidence that is sufficiently detailed to establish a genuine issue concerning every essential element of the case.    That being the case, the Court will deny EPISD's Motion for Summary Judgment.

## BACKGROUND

In the summer of 2020, Familias Unidas filed a lawsuit charging that EPISD intentionally discriminated against Mexican and Mexican American students, in violation of the Fourteenth Amendment's Equal Protection Clause and Title VI of the Civil Rights Act, when it closed three elementary schools.    Compl., ECF No. 1; Am. Compl. ¶¶ 300, 305, 311, ECF No 24. The lawsuit was brought by Familias Unidas, a nonprofit made up of parents, guardians and caregivers of the children who attended the schools that were closed.    Am. Compl. ¶ 5, ECF No. 24.

During the last decade, declining student enrollment in Central El Paso led to decreases in revenue for EPISD and required the district to reduce expenditures.    Resp. 3, ECF No. 104.    At the same time that EPISD's enrollment and revenue was waning, the District engaged in a cheating scandal that targeted Limited English Proficiency ("LEP") students in the Southside of El Paso.    Resp. 3, ECF No. 104.    Following the emergence of the cheating scandal in 2010, the Texas Education Agency lowered EPISD's accreditation status and installed a Board of Managers to govern the District from May 2013 to May 2015.    Resp. 4, ECF No. 104.    The decrease in resources and the change in governance influenced EPISD's decision, in 2016 and then again in 2019, to close two sets of schools in Central El Paso.    Resp. 3–5, ECF No. 104.

Following the cheating scandal, the Board of Managers commissioned Jacobs Project Management Co. ("Jacobs"), an engineering and construction firm, to create a "master plan . . . for future facility use including renovations, additions, new construction, replacements,

consolidation, and/or disposition." Am. Compl. 14, ECF No. 24; Resp. 3, ECF No. 104. With respect to schools near the Chamizal area, that master plan recommended closing Beall Elementary and investing millions of dollars to modernize Douglass, closing Zavala and investing millions of dollars to modernize Burleson, and closing Alta Vista and consolidating those students into Crockett, Coldwell, and Moreno, as well as modernizing Crockett and Coldwell. Resp. 4, ECF No. 104.

When the Board of Trustees was reinstated in 2015, it created a Facilities Advisory Committee ("FAC"), whose role was to review the Jacobs plan and bring back recommendations for the Board's approval. *Id*; Mot. for Summ. J. 3–4, ECF No. 87. The FAC ultimately recommended a $668 million bond, which was used to close and consolidate twelve elementary schools in EPISD in 2016. Importantly, the bond provided construction funding to modernize the schools that were consolidated at this time. Mot. for Summ. J. 3–4, ECF No. 87; *Id.* at 5. At this point Beall, Burleson, and Alta Vista, the schools at issue here, remained open. Am. Compl. 16, ECF No. 24.

After the approval of the 2016 bond-supported closures, the district's financial problems worsened. Mot. for Summ. J. 4, ECF No. 87. EPISD holds that it implemented various cost reduction strategies, but that in 2018 it recognized that it needed to close more schools to cut expenses further and to avoid cutting teacher salaries or laying off teachers. *Id.*

In December of 2018, the Board publicly presented two options for the additional school closures, one of which included closing Beall, Burleson, and Alta Vista. Resp. 5, ECF No. 104. Less than two months later, the Board voted to close the three schools, even though one of them—Alta Vista—lacked representation at the time. *Id.* at 5–6. While the schools that closed and consolidated in 2016 ("2016 Bond Schools") received bond funding for renovations,

the schools that were closed in 2019 ("2019 Schools") did not receive any bond funding to improve the new campuses where the students were sent.    Am. Compl. 30, ECF No. 24; Mot. for Summ. J. 5, ECF No 87.

## LEGAL STANDARD

Summary judgment is appropriate when "view[ing] the facts in the light most favorable to the non-movant" and "draw[ing] all reasonable inferences in [his] favor," "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (quoting Fed. R. Civ. P. 56(a)).    "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."    *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict of the nonmoving party."    *Id.*

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."    *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).    "Once the moving party has demonstrated the absence of a material fact issue, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."    *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017). The burden of showing "specific facts" that establish a "genuine issue concerning every essential component of the case" cannot be met "by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."    *Id.*

In ruling on a motion for summary judgment, courts "refrain from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotations omitted).   That is, courts refrain from "determin[ing] the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ANALYSIS

Familias Unidas charges EPISD with violating the Equal Protection Clause of the Constitution and Title VI of the Civil Rights Act.   Am. Compl. ¶¶ 300, 305, 311, ECF No 24. The Supreme Court has interpreted Title VI as a statute designed to "halt federal funding of entities that violate a prohibition of racial discrimination similar to that of the Constitution."   *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 284 (1978).   Thus, the Court will apply the same constitutional law analysis to the Equal Protection violation charge and the Title VI charge.

Plaintiffs can prove violations of the Equal Protection Clause and Title VI in one of two ways: through direct evidence or circumstantial evidence.   Civil Rights Division, Title VI Legal Manual, Section VI at 4 (Updated April 22, 2021).   Plaintiffs that rely on circumstantial evidence must show both discriminatory effect *and* discriminatory intent.   *Id*; *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977).   Here, Familias Unidas relies on circumstantial evidence to prove its claims.   Thus, it must provide evidence of both discriminatory effect and intent.

Discriminatory effect can be shown by providing evidence that a similarly situated group of a different race was not persecuted.   *United States v. Armstrong*, 517 U.S. 456, 465 (1996).   Persecution is often demonstrated through statistics showing that people of a certain race were disparately impacted by a harmful policy.   In rare cases where courts can discern a drastic

5

disparate impact that is "unexplainable on grounds other than race," discriminatory effect may be sufficient to prove a constitutional violation—that is, to prove discriminatory effect *and* discriminatory intent. *Arlington Heights*, 429 U.S. at 266. However, this situation is rare. *Id.*

Where "impact alone is not determinative . . . the Court must look to other evidence" to show discriminatory intent. *Id.* Such evidentiary sources include departures from the normal substantive and procedural factors during the decision-making process, and the historical background of the decision. *Id.*

Here, Familias Unidas has not shown—and does not argue—a discriminatory effect so stark that it is also probative of intent. Thus, it must ultimately show both discriminatory effect and intent to make out a claim against EPISD. At the motion for summary judgment stage, however, the Court need only analyze whether Familias Unidas has provided "specific facts" that establish a "genuine issue concerning every essential component of the case." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

The Court will first examine whether Familias Unidas has shown a genuine dispute as to whether the students at the schools closed in 2019 were disparately impacted by the school closures as compared to students at the schools closed in 2016. As part of this analysis, the Court will consider: (1) whether the 2016 Bond Schools are an appropriate comparator group for the 2019 Schools, and (2) whether the 2019 Schools are more Mexican and Mexican American than the 2016 Bond Schools. The latter is necessary for Familias Unidas to show that Mexican and Mexican American students were disparately impacted based on race.

The Court will then consider whether there is a genuine dispute as to whether EPISD's decision to close the elementary schools was made with discriminatory intent. As part of this analysis, the Court will consider whether EPISD's decision-making process in closing the

6

schools involved substantive and procedural departures from its normal decision-making and whether the decision occurred amidst a history of discrimination towards Mexican and Mexican American students.   The Court concludes that Familias Unidas has shown that there is a genuine dispute about both discriminatory effect and discriminatory intent.

1.   **Familias Unidas Has Provided Specific Facts To Show That The 2019 Closures May Have Had a *Discriminatory Effect* on Impacted Students.**

Familias Unidas asserts that the 2016 Bond Schools serve as a comparator group to demonstrate the disparate impact of EPISD's actions. Resp. 1–2, 9, ECF No. 104.   EPISD argues that students at the 2016 Bond Schools are not "similarly situated" to the students affected by the schools closed in 2019.   Reply 4, ECF No. 107.   It also argues that, even if the comparator group offered by Familias Unidas was "similarly situated," Familias Unidas fails to show a disparate impact between that group and the students affected by the 2019 school closures.   Mot. For Summ. J. 243, ECF No. 87–1.

In this section, the Court will discuss whether a reasonable factfinder could conclude that both sets of schools, those that closed in 2016 and received bond funding towards consolidation and renovation of the new campuses and those that closed in 2019 but did not receive funding, are similarly situated.   Next, the Court will analyze whether a reasonable factfinder could find that the schools closed in 2019 were more predominantly Mexican and Mexican American than the schools that closed in 2016.

a.   **Case law around the "similarly situated" analysis as it relates to equal protection cases.**

The briefs begin by analyzing whether EPISD has shown that its decision to close the schools disparately impacted Mexican and Mexican American students relative to similarly situated non-Hispanic persons.   To prove discriminatory effect in a race case, such as this, "the

claimant must show that similarly situated individuals of a different race were not persecuted."
*United States v. Armstrong*, 517 U.S. 456, 465 (1996).    Individuals are similarly situated when
they are "in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).   For that
reason, the parties analyze the question of a similarly situated comparator group, and specifically
whether the 2016 Bond Schools are similarly situated, as part of their analysis of the discriminatory
effect of the official action.   Mot. for Summ. J. 13, ECF No. 87; Resp. 8–11, ECF No. 104.

     Recent case law from the Fifth Circuit, however, has pointed out that there is
uncertainty about when a similarly situated analysis must be performed.   *Rollerson v. Brazos*
*River Harbor Navigation Dist. of Brazoria Cnty*, Texas, 6 F. 4th 633, 640 n.4 (5th Cir. 2021).
Other circuits have found that plaintiffs alleging intentional discrimination under civil rights
statutes "need not demonstrate the existence of a similarly situated entity who or which was treated
better than the plaintiff in order to prevail."   *See Pac. Shores Props., LLC v. City of Newport*
*Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013).   Some legal scholars argue that Courts have erred by
performing a "similarly situated" analysis as a threshold inquiry.   *See generally* Giovanna Shay,
*Similarly Situated*, 18 Geo. Mason L. Rev. 581 (2011).[1]   Nonetheless, because the Fifth Circuit
continues to perform the analysis in Equal Protection and Title VI cases, the Court will evaluate

---

1 One scholar argues that this analysis is a remnant of case law that predates the tiered scrutiny analysis that courts
now perform.   Shay, *Similarly Situated, supra,*  at 598.   She further argues that the "similarly situated" analysis
has become redundant as it mimics the fit analysis that considers the relationship between the classification and the
aims of the legislative policy.   *Id.* at 615.   In her words: "properly understood, 'similarly situated' analysis is
relational. Its focus is not merely pointing out any difference between the two classes, but rather evaluating the
relationship between the classification and the statutory purpose."   *Id.*

whether Familias Unidas has shown that it received treatment different from that received by similarly situated individuals.

### b. A reasonable fact finder could conclude that the students at the schools closed in 2016 were similarly situated to students at the schools closed in 2019.

Whether comparators are similarly situated is generally a question of fact. *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 88–89 (5th Cir. 2019). Furthermore, there is no "precise formula" to determine whether comparators are similarly situated and the inquiry "depend[s] substantially on the facts and context of the case." *Lindquist v. City of Pasadena*, 669 F. 3d 225, 233–34 (5th Cir. 2012). Courts find that groups that are "in all relevant aspects alike" are similarly situated. *Nordlinger v. Hahn*, 505 U.S. at 10.

The comparator group offered by Familias Unidas is the schools that were closed by EPISD in 2016 as part of the granting of a bond which would close some schools and consolidate them into existing schools. Resp. 1–2, 9, ECF No. 104.[2] Those existing schools would receive funds for improvements. *Id.* at 2.

EPISD argues that the students at the 2016 Bond schools are not "similarly situated" to the students affected by the schools closed in 2019 because the decisions to close the schools in 2016 "were different actions made by different decision makers at different times in the context of different facts." Reply 4, 6 ECF No. 107.

EPISD cites to the Fifth Circuit to support its proposition, arguing that a proper comparator group cannot be different people treated differently because of "a different governmental action or regulation." *Id.* at 5; *See Tex Emt. Ass'n Inc. v. Hegar*, 10 F.4th 495, 514

---

[2] Where, as here, the ECF page numbers assigned by the Court's docketing system differ from the page number of the document, the Court will use and refer to the ECF page numbers.

(5th Cir. 2021).   However, the Fifth Circuit case does not make this holding.   *See Tex Emt. Ass'n.*
*Inc. v. Hegar*, 10 F.4th at 514.   In fact, the analysis in that case focused not on a different
regulation or decisionmaker, but on the differences between the businesses that were being
compared, in that case a latex club and a sports bar, and the different purposes they serve.   *Id.*
That reasoning would not apply here where both groups are schools and therefore serve the same
purpose, educating El Paso students.

Furthermore, Familias Unidas draws comparisons to the schools closed in 2016 and
the schools closed in 2019 to support its claim that the two groups are in all relevant aspects alike,
as the case law around the similarly situated analysis requires.   Resp. 9, ECF No. 104; *Nordlinger*
*v. Hahn*, 505 U.S. 1, 10 (1992).   For example, Familias Unidas argues that both the schools closed
in 2016 and the schools closed in 2019 were closed in an attempt to "reduce campuses in response
to declining enrollment."   Resp. 9, ECF No. 104.   This is exactly the type of similarity that courts
should consider when determining whether a seemingly problematic classification, is in fact,
constitutional because it relates the classification to the purpose of the governmental action.   Resp.
9, ECF No. 104.

Importantly for the summary judgment stage, Familias Unidas offers specific, and
substantiated facts to support this argument, including testimony from school board officials that
both sets of schools were considered for closure to save the district money and that EPISD
considered some of the same factors when closing both sets of schools.   *Id*; ECF No. 97–6 at 35–

36.   The Court finds this evidence sufficient for a reasonable fact finder to conclude that the schools closed in 2016 and 2019 were similarly situated.

### c.   A reasonable fact finder could conclude that the schools closed in 2019 were more Mexican and Mexican American than 2016 Bond Schools.

Apart from the triable question of whether the two groups of schools that were closed were similarly situated, there is also a question about whether the groups of students at the different schools differed with respect to race, i.e., whether the groups were classified and treated differently based on race.   Specifically, there is debate amongst the experts in this case about whether the student population of the schools closed in 2019 were more Mexican and Mexican American than the schools closed in 2016.   Familias Unidas offers evidence showing that "the share of Hispanic students at Beall, Burleson, and Alta Vista is 2.37 standard deviations above what would be expected from a neutral selection process."   Resp. 10, ECF No. 104.   EPISD offers as evidence that the groups do not differ according to race, statistics showing that "the average share of Hispanic students [at the schools closed outside of the Bond Project] is not higher than the [ ] average share of Hispanic student that were closed and received construction funding."[3] Mot. for Summ. J. 243, ECF No. 87–1.   Determining which set of statistics is decisive is a question of fact and therefore should be left for the fact finder.

In addition to its race-based disparate impact claim, Familias Unidas raises a claim based on national origin to show disparate impact.   Because the Court finds that there is a genuine issue of material fact relating to the question of disparate impact based on race, it will not analyze

---

[3] Note that the Court has stricken portions of EPISD expert Andres Bernal's Second Report and the entirety of his Third Report.   *See* Memorandum Opinion and Order Granting Motion to Strike, ECF No. 110.   However, his First Report and portions of his Second Report remain on the record.

11

the other claims related to disparate impact in this opinion.   Resp. 13–16, ECF No. 104; Reply 10–11, ECF No. 107.

The Court thus concludes that there is a genuine issue of material fact about whether Mexican and Mexican American students were disparately impacted by the closure decisions as compared to similarly situated students.   At this time, the Court must "refrain from making credibility determinations or weighing the evidence" and from "determine[ing] the truth of the matter." *Turner*, 476 F.3d at 343; *Anderson*, 477 U.S. at 249.   Thus, although the Court cannot say whether Familias Unidas can ultimately meet its burden to show disparate impact, there is evidence sufficient for a reasonable fact finder to return a verdict for Familias Unidas on the material issue of disparate impact.

### 2.   Familias Unidas Has Provided Specific Facts To Show That The 2019 Closures May Reflect *Discriminatory Intent* Under The *Arlington Heights* Factors

It was EPISD's burden, in its motion for summary judgment, to identify the "portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C.*, 773 F.3d 688, 694 (5th Cir. 2014).   However, EPISD's motion is largely devoid of case law or non-conclusory arguments. Rather, it is predominantly a restatement of the facts as understood by EPISD.

Courts use proof of disparate impact coupled with the *Arlington Heights* factors to analyze discriminatory intent in cases involving facially neutral classifications. These non-exhaustive factors are: (1) the discriminatory effect of the official action; (2) the historical background of the decision; (3) the specific sequence of events leading up to the decision; (4) departures from the normal procedural; (5) departures from the normal substantive factors, and; (6) the legislative or administrative history of the decision. *See Arlington Heights,* 429 U.S. at

266–268.   While EPISD's Motion for Summary Judgment does mention the *Arlington Heights* factors at the beginning of the brief, the brief itself is not organized in relation to those factors. *See* Mot. for Summ. J. 9, ECF No. 87.   Instead, EPISD only meaningfully discusses two factors[4] in its motion for summary judgment ("departures from normal substantive factors" and "departures from the normal procedural sequence") and three in a subsequent reply ("substantive departures," "departures from the normal procedural sequence," and "historical background of the decision").[5] Mot. for Summ. J. 11–12, ECF No. 87; Mot. for Summ. J. 17–19; Reply 14–16, ECF No. 107; Reply 17, ECF No. 107; Reply 12–13, ECF No. 107. Because courts use proof of disparate impact coupled with the Arlington Heights factors to analyze discriminatory intent in cases involving facially neutral classifications, the Court will attempt to analyze EPISD's remaining arguments in light of these three *Arlington Heights* factors.

        To rebut EPISD's Motion for Summary Judgment, Familias Unidas must provide evidence supporting its claim that EPISD ignored substantive factors it usually considers, departed

---

4 The Court construes these factors substantively.   Thus, the headings used by EPISD may differ from how the Court construed them.   For example, EPISD often refers to school capacity considerations as procedural departures. Mot. for Summ. J. 13–14, ECF No. 87.   However, the Court considers this factor a substantive departure, not a procedural one.   Likewise, the Court considers lack of translation services at community meetings a procedural departure, not a substantive one.

5 Note that District Courts should generally not consider arguments raised for the first time in a reply brief unless the nonmovant had an opportunity to respond.   *Vais Arms, Inc. V. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).   Here, EPISD raised a number of arguments for the first time in its reply brief.   Of these arguments, the Court will only consider its arguments about the historical background of the decision because it was addressed in depth in Familias Unidas' brief.

from its normal procedures, and that the decision was shrouded in an invidious history.   The Court will examine each factor in turn.

### a. A reasonable fact finder could conclude that EPISD's decision to close the schools in 2019 reflected a departure from normal substantive factors.

In evaluating whether a decision was made with discriminatory intent, courts may look to substantive departures, "particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *Arlington Heights*, 429 U.S. at 267.   Here, there is debate about the way EPISD calculated its school capacity measurements, a factor that it uses to determine which schools are under-utilized, and thus, which schools to close.   On this point, Familias Unidas argues that EPISD "manipulat[ed] capacity measurement criteria to promote the closure of schools with more Mexican American students and in more Mexican Americans neighborhoods, and preventing closure of schools with more white students and in more white neighborhoods."   Am. Compl. ¶ 301(a), ECF No. 24.   While in the past, EPISD used the Jacobs report to count classrooms where students received standard daily instruction, in 2018 EPISD used a "more rudimentary calculation," counting all rooms that were "classroom sized" regardless of what they were used for.   Resp. 19, ECF No. 104.   According to Familias Unidas, this different methodology "impacted utilization rates and ultimately whether schools were eligible for closure in 2019," thereby evincing EPISD's discriminatory intent.   *Id.* at 20.

EPISD responds that the reason it did not use the prior capacity numbers produced by the Jacobs report was because they were four years old, not for any discriminatory reason.

14

Mot. for Summ. J. 11, ECF No. 87.   However, this does not explain why EPISD changed the *methodology* around calculating school capacity.

EPISD's strongest point, though, is that if it had used the past method for calculating school capacity the only difference in outcomes would have been that Burleson would not have been considered for closure.   Mot. for Summ. J. 12–13, ECF No 87.   Alta Vista and Beall would have been considered for closure under either method for calculating capacity.   *Id.*   Based on this factor alone, it is possible that no reasonable jury would find that EPISD acted with discriminatory intent when it chose to close Beall, Burleson, and Alta Vista, since the outcome would not have been drastically different under either method for calculating school capacity.   However, Familias Unidas offers two more arguments that it alleges show substantive departures from normal decision-making.

First, Familias Unidas argues that EPISD ignored warnings that enrollment at the schools was only low due to changes in public housing which temporarily displaced tenants that had school-aged children.   Familias Unidas offers evidentiary support on this point, including the minutes from a Special Meeting of the EPISD Board of Managers, where the Housing Authority of El Paso informed EPISD that upcoming changes to public housing could affect student enrollment.   Resp. 22, ECF No. 104; ECF No. 97–10 at 303.   Familias Unidas also charted the addresses of students attending Burleson who lived in one of the public housing complexes affected by the changes.   Resp. 22, ECF No. 104; ECF No. 102 at 7.   That chart shows a dip in enrollment as students presumptively moved temporarily due to the housing changes, and then

15

moved back to the area. *Id.* While this evidence is circumstantial, it does lend support to the argument that important factors that would usually be considered by decisionmakers were ignored.

Second, Familias Unidas argues that EPISD failed to consider other substantive factors that it claimed it had considered in the past like campus property size, academic programming, transportation, location of the school, and the school's proximity to major roadways. Familias Unidas provides evidence to support these points, including deeds, depositions of parents whose children were affected by the school closures, and documentation from EPISD's Transportation Department. Resp. 24–25, ECF No. 104; ECF No. 97–10 at 481–84; ECF No. 97–11 at 11–16; ECF No. 97–11 at 29, 31, 60, 72. EPISD argues that these factors were considered, but that other factors made the District ultimately decide to close Beall and Burleson over other schools. Reply 15, ECF No. 107. Like the factors above, viewed in the light most favorable to Familias Unidas, these facts support the contention that EPISD gave less importance to factors that it had considered in the past.

Each factor that Familias Unidas alleges was not considered or not given enough weight on its own could be explained away as a policy choice when considered in isolation. However, when considered collectively, and when viewing the facts in the light most favorable to Familias Unidas, a reasonable fact finder could find that the decisions to discount certain substantive factors evinces discriminatory intent.

> **b. A reasonable fact finder could conclude that EPISD departed from its normal procedures by deciding to close Beall, Burleson, and Alta Vista without providing translation services at community meetings.**

EPISD argues that Familias Unidas has not shown any departures from its normal decision-making procedures in connection with the decision to close the three elementary schools in 2019. Reply 16, ECF No. 107. It argues that with respect to the lack of translation services at

community meetings—an issue raised by Familias Unidas in its complaint—the issue was not that parents weren't being heard, but that parents were dissatisfied that "the District ultimately reached a decision Plaintiff did not agree with." *Id.* at 17.   To support this point, EPISD cites to the deposition of a member of Familias Unidas—Hilda Villegas—who discusses speaking to a school official at least once about her concerns with closing Beall Elementary School.   ECF No. 87–1 at 821–23.   Notably, this evidence does not directly refute Familias Unidas' contention that, at least in some instances, community members did not feel heard because of a lack of translation services.

On the other side, Familias Unidas argues that EPISD deviated from its typical procedures while making the decision to close Beall, Burleson, and Alta Vista.   Familias Unidas points to EPISD's School Closure Guide, which directs administrators to involve the community throughout the process of closing a school.   ECF No. 97–11 at 139, 141–142.   Yet, testimony from Susanna Byrd, a former Trustee of the school board who represented Alta Vista, offers evidence that the community was not involved in the decision-making process. ECF No. 97–8 at 48–49.   Familias Unidas also offers evidence from former Trustee Velarde showing that community members spoke Spanish at Trustee meetings where Spanish interpretation services were not provided.   ECF No 97–6 at 37–38.   Although a couple of the board members at one such meeting spoke some Spanish, others did not speak any.   *Id.*   Familias Unidas also provides evidence that Spanish-speaking parents' concerns were not translated during the grievance procedure process.   ECF No. 97–8 at 370, 372.   A transcript of a grievance hearing merely marks comments from Spanish-speaking parents as "speaking Spanish" or "Saying something in Spanish."   *Id.*

It appears to the Court that there may have been multiple opportunities for community engagement throughout the school-closure process.   The question is whether the

17

community was afforded a genuine opportunity to engage with decisionmakers.   Genuine engagement would entail clear communication between EPISD and the families of the students, and whether or not the parents understood what was being said at community meetings is relevant to that analysis.   Familias Unidas provides evidence that at least some monolingual community members could not meaningfully participate.   A reasonable fact finder could find that evidence indicative of substantive departures from EPISD's typical school closure procedures.

### c. A reasonable fact finder could conclude that the historical background of the decision to close the three elementary schools evinces discriminatory intent by EPISD.

"The historical background of the decision is one evidentiary source, particularly if it reveals a series of official actions taken for invidious purposes." *Veasy v. Abbott*, 830 F.3d 216, 232 (5th Cir. 2016) (quoting *Arlington Heights*, 429 U.S. at 267).   However, the Supreme Court has warned that "unless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value." *Id.* ((quoting *McCleskey v. Kemp*, 481 U.S. 279, 298 n.20 (1987) (finding that laws in force during and just after the Civil War were not probative of the legislature's intent many years later)).   In a recent Fifth Circuit opinion examining how far back Courts should look when analyzing historical background as an evidentiary source, the court found that "the most relevant 'historical' evidence is relatively recent history, not long-past history." *Id.* Yet, the Fifth Circuit chose not to articulate a particular time limit, and it specifically recognized that discrimination in education can have a particularly enduring effect. *Id.*

Familias Unidas argues that EPISD has historically underfunded education for Mexican and Mexican American students.   Resp. 16, ECF No. 104.   A report submitted by its experts on United States and Borderlands history, Yolanda Chávez Leyva and Angelina Martinez, details decades of discrimination against Mexican and Mexican American students in the Chamizal

18

area of El Paso.   ECF No. 97–10 at 20–50.   Per the report, that discrimination involved language

suppression, pushing students towards vocational training instead of more academically oriented

careers to promote a labor force, and underfunding of schools by directing a significant amount of

bond funds to schools serving white students, despite experts encouraging school board officials

to direct the funds to schools in the Chamizal area.   *Id.* at 18–21, 28.

EPISD argues that Familias Unidas' "recitation of El Paso history has no relevance

to the 2019 Closure Decision."   Reply 13, ECF No. 107.   However, the Fifth Circuit has

recognized that, in the education context, discrimination can have enduring effects.   *Veasy*, 830

F.3d at 232.   Indeed, Ms. Martinez's report includes evidence from the Department of Health,

Education, and Welfare showing that the educational gap between Spanish-speaking and non-

Spanish speaking students persisted through the 1970s.   ECF No. 97–10 at 45.   Additionally,

Plaintiff points to a recent history of calculated discrimination by EPISD towards Mexican and

Mexican American students.   Between 2007 and 2013—that is, less than ten years ago—EPISD

officials "implemented a scheme to artificially reduce the number of 10th grade Limited English

Proficiency (LEP) students at certain high schools using various unlawful strategies."   Resp. 17,

ECF No. 104.   The effect of that scheme was that many students "missed out on federally-funded

interventions from which they would have benefitted, and EPISD was faced with a future reduction

in funds to assist [English as a Second Language ("ESL")] students."   ECF No. 97–8 at 74.

Familias Unidas has pointed to evidence showing "a series of official actions taken

for invidious purposes" by EPISD.   *Veasy,* 830 F.3d at 232.   Familias Unidas not only indicated

a robust history of discrimination but also actions taken by the District within the past ten years

that harmed Mexican and Mexican American students in an attempt to evade federal

accountability.   When viewing these facts in the light most favorable to Familias Unidas, and

drawing all inferences in its favor, this Court finds that the allegations of EPISD's historical discrimination creates a genuine issue for trial.

## CONCLUSION

EPISD argues that Familias Unidas lacks evidence to support its claim that the District violated the Equal Protection Clause and Title VI by closing three elementary schools near the Chamizal area of El Paso.   Mot. for Summ. J. 2, ECF No. 87.   The Court finds that Familias Unidas has provided specific facts that establish a genuine issue concerning every essential component of the case.   EPISD's Motion for Summary Judgment will therefore be denied.

Accordingly, **IT IS HEREBY ORDERED** that Defendant El Paso Independent School District's "Motion for Summary Judgment," ECF No. 87, is **DENIED**.

SIGNED this _3rd_ day of **September 2022.**

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

20